[No. 31240. Department One. August 17, 1950.]

EARLE G. HUTSON, *Appellant,* v. SAMUEL WALKER *et al.,* *Respondents.*[1]

*Ralph Purvis* and *James B. Sanchez,* for appellant.

*Mifflin & Mifflin,* for respondents.

*Eggerman, Rosling & Williams, amicus curiae.*

DONWORTH, J.—This is a replevin action brought by the original owner of a Buick convertible coupe against a bona fide purchaser thereof from an intervening wrongdoer. During the pendency of the action the car was, by stipulation of the parties, sold to the defendant for $2,045, which sum was paid into the registry of the court. This was done without prejudice to the rights of either party with respect to their contentions in this replevin action.

At the conclusion of the trial, the court orally announced its decision in favor of the plaintiff. After defendants' mo-

[1]Reported in 221 P. (2d) 506.

tion for judgment notwithstanding the oral decision or for a new trial had been presented, the court changed its decision and entered findings of fact and judgment dismissing the plaintiff's action with prejudice and awarding defendants the sum of $2,045, then in the registry of the court. From this disposition of the case, the plaintiff has appealed.

The chain of events giving rise to this action is succinctly described in the first five findings of fact adopted by the trial court, which are as follows:

"I

"That prior to February 3, 1948, the plaintiff was the owner of one certain 1946 Buick Convertible Coupe automobile, Serial No. 14488925, Motor No. 46794755, then in the possession of plaintiff.

"II

"That on February 3, 1948, the plaintiff, for the purpose and with the intent of effecting a sale to Anderson Buick Company of Seattle, Washington, of said automobile, delivered the possession of said automobile to one Samuel Lee, who then represented himself to plaintiff as being in the employ of Anderson Buick Company of Seattle, and that plaintiff at said time also endorsed and delivered to the said Samuel Lee, all in blank, the Certificates of Registration and Title to said automobile, with the name of the plaintiff, Earle G. Hutson, as Legal and Registered Owner of said automobile signed off in blank upon the reverse side of such Certificate of Title, and that at said time the plaintiff, Earle G. Hutson, executed and delivered to the said Samuel Lee bill of sale of said automobile in blank, and that at such time the plaintiff received from the above named Samuel Lee check in the amount of $2,700.00 drawn on Seaboard Branch of the Seattle First National Bank, in favor of the plaintiff named therein as Earl G. Hudson, bearing upon the lower lefthand side thereof the name "Anderson Buick Co." and purporting to be signed by R. L. Anderson.

"III

"That, after so delivering to the said Samuel Lee possession of such automobile and the indicia of title thereto hereinabove referred to, including said blank bill of sale, plaintiff caused the $2700.00 check to be presented for payment to the Bank upon which the same was drawn, whereupon it was discovered that said check was a forgery.

"IV

"That later in the day of February 3, 1948, the said Samuel Lee, being then in the possession of said automobile and armed with the indicia of title so entrusted to him by the plaintiff, including said blank bill of sale to said automobile signed by the plaintiff, the said Samuel Lee, having meanwhile filled in the blank spaces in said bill of sale so as to show Samuel Lee rather than Anderson Buick Company as the purchaser of said automobile and so as to show a date of Jan. 10, 1948, rather than February 3, 1948, date of said transaction, and so as to show a purchase price of $2560.00, rather than $2,700.00, for said automobile, contacted and negotiated with the defendant Samuel Walker for the sale to Samuel Walker for cash of said automobile and that at said time the person referred to as Samuel Lee then had in his possession said automobile and the indicia of title thereto, hereinabove referred to, including said blank bill of sale meanwhile filled in by him as hereinabove set forth, and that thereupon, and in due course of business, and pursuant to the custom and practice then existing in the city of Seattle, the defendant Samuel Walker purchased said automobile of the said Samuel Lee for cash, for the sum of $2150.00, per check issued therefore and cashed by the said Samuel Lee, and that the sum of $2150.00 so paid by the defendant Samuel Walker for said automobile was on said day in Seattle, Washington, the reasonable market value of said automobile.

"V

"That at said time the defendants had no notice or knowledge of any defect in the title to or possession of said automobile by the person referred to as Samuel Lee and that the defendant in the transaction referred to acted in good faith and was an innocent purchaser of said automobile and that the transaction so had by the person referred to as Samuel Lee with the defendants was made possible by the trust and confidence reposed by plaintiff in the person referred to as Samuel Lee including the entrusting by plaintiff of the said Samuel Lee with possession of said automobile and all of the indicia of title thereto, including blank bill of sale to said automobile, upon the strength of an uncertified check of an unknown maker."

The respondent husband will be referred to as though he were the sole defendant and respondent.

Appellant's single assignment of error is that the

trial court erred in dismissing his complaint and in holding that respondent had good legal title to the car. Since appellant does not claim error with respect to any of the findings of fact, they will be accepted as the facts established by the evidence. *Hansen v. Lindell,* 14 Wn. (2d) 643, 129 P. (2d) 234.

The ultimate question for decision is whether, under the facts found by the trial court, respondent, through his dealings with Mr. Lee, acquired good title to the car as against appellant.

Appellant contends that a negative answer to this question is required by our decision in *Frye & Co. v. Boltman,* 182 Wash. 447, 47 P. (2d) 839, in which we construed Rem. Rev. Stat., § 2129 [P.P.C. § 112-97], which reads:

"All property obtained by larceny, robbery, or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property; . . . "

In construing the foregoing statute in the cited case, we held that, on the authority of *Linn v. Reid,* 114 Wash. 609, 196 Pac. 13, the term "larceny" as used therein included the receiving of property by false impersonation of the party to whom the property was intended to be delivered.

In the *Frye* case, an imposter purchased a team of horses from Frye & Co. and paid for them with a check upon which he forged the name of the man he impersonated. Before the forgery was discovered, the impersonator had sold the horses to an innocent purchaser for value. In deciding that the imposter could not convey a valid title because of the provisions of § 2129, we said:

"It was there squarely held that what the legislature intended to cover by the use of the word 'larceny' must be determined from what the law then defined as larceny. Since by the act of 1854 what was here done was defined as larceny and since that act declared that property so obtained must be returned to the owner, notwithstanding a purchase in good faith by one not a party to the wrongdoing, we see no escape from the conclusion that appellant is entitled to recover under the statute."

However, the next paragraph of our decision, which recognizes that the principle of equitable estoppel may apply to such cases in spite of § 2129, reads:

"Of course, one so entitled to recover may, by acts amounting to an equitable estoppel, place himself in a position where he cannot enforce his legal title, but we see nothing in the facts of this case which even approaches equitable estoppel."

In view of the conclusion we have reached in the present case, we do not find it necessary to further consider the effect of § 2129 or other portions of the 1854 act.

The opposite result was reached by this court in the earlier case of *Linn v. Reid, supra,* which is similar to the case at bar in that the former owner of the car had voluntarily delivered it to two wrongdoers with the intent that title should pass to them. We there pointed out the basis for our decision as follows:

"In considering the case, sight must not be lost of the manner in which respondent surrendered his car. He traded it and delivered possession of it to the two persons who traded and delivered to him possession of the Hudson car. There was no element of trespass on the part of the two persons in getting the Maxwell car. It was voluntarily surrendered by the respondent who parted with possession of it with intent to pass title to the wrongdoers, thus giving to them all the *indicia* of ownership and the apparent right of disposal. Under such circumstances, in the absence of a statutory rule to the contrary, a *bona fide* purchaser from the vendee will be protected. It is but the enforcement of the old and familiar rule that, of two innocent persons one of whom must suffer by the fraud of a third person, he who has put it in the power of such third person to commit the fraud must be the sufferer. The basis of protection to the *bona fide* purchaser, in cases such as the present 'one, is the voluntary act of the original vendor in parting with both the title to and possession of the property. Unless this difference in the manner in which property is acquired from its lawful owner is kept in mind—that is, whether by trespass, or by the voluntary act of the lawful owner—a misunderstanding of the well-reasoned cases may follow."

Since the decision in the *Linn* case, *supra,* the legislature has enacted Rem. Supp. 1947, § 6312-6, which was in effect

at the time of this transaction. This section is part of an act providing for the registration of the ownership of motor vehicles with the department of licenses and the issuing of a certificate of title by the director of licenses. Such a certificate, properly endorsed by the registered owner (and legal owner) and signed by the purchaser, entitles the purchaser as transferee, upon payment of a small fee, to have a new certificate of title issued to him by the director of licenses certifying that he is the owner of the motor vehicle according to the records of the department of licenses.

In *Merchants Rating & Adjusting Co. v. Skaug*, 4 Wn. (2d) 46, 102 P. (2d) 227, we had occasion to consider the effect of the provisions of a similar statute enacted in 1937 (Rem. Rev. Stat., Vol. 7A, § 6312-6 [P.P.C. § 278-9]). That case involved the right of a mortgagee of a motor vehicle who failed to see that a new certificate was obtained by the mortgagor from the director of licenses in compliance with Rem. Rev. Stat., Vol. 7A, § 6312-7 [P.P.C. § 278-11]. A subsequent mortgagee and mortgagor did obtain such a certificate. We held that the former's mortgage was void as to the subsequent mortgagor and mortgagee because the former mortgagor and mortgageee had failed to comply with the act. In commenting on the effect of the then existing registration act, we said:

"We have examined a number of such statutes. The California, Montana, and Utah statutes are outstanding examples of the class which are intended to be effective title registration acts. By the statutes of these three states, and probably by the statutes of others, the precise difficulty presented by the instant case is wholly obviated, since each of them expressly provides that a chattel mortgage or other lien not registered with the state department of motor vehicles, shall be void as to subsequent purchasers and encumbrancers. Our statute has no such provision, yet it may be that one who takes a mortgage on a motor vehicle and does not see to it that § 6312-7 is complied with, may lose his lien in a contest with a subsequent innocent purchaser or encumbrancer, due to the equitable doctrine upon which respondents rely.

"We shall not attempt to answer the broad general question stated in the first paragraph of this opinion. That is not necessary to a decision of the case. Stated in similar general terms, the question actually presented is this: Is the mortgagee of a motor vehicle who files his mortgage in the office of the auditor of the county in which the vehicle is then situated, in accordance with §§ 3781 and 3782 of the code, but who makes no effort to see that § 6312-7 is complied with, in danger of losing his lien? It is our opinion that he is, and that the case before us presents an instance of just such an occurrence."

■■ The certificate of title issued to appellant in this case was executed by him in blank and delivered to Samuel Lee at the time he gave Lee the possession of the car. If appellant had insisted upon having the instrument signed by the Anderson Buick Company as transferee, Samuel Lee could not have sold the car to respondent. Furthermore, if appellant had insisted upon having the name of Anderson Buick Company inserted in the bill of sale as transferee, this might have prevented a resale by Lee to respondent, although the bill of sale was not essential to transfer title to the car as a matter of public record.

By failing to do either of these things, appellant clothed Samuel Lee with *indicia* of title and the power to tranfer the same in the records of the department of licenses. The possession of these documents, together with the possession of the car given by appellant, enabled Lee to make the sale to respondent, who bought it in good faith and for value.

Under the facts as found by the trial court, appellant is estopped by his conduct to question respondent's title to the car. This case is a proper one in which to apply the rule applied in *Linn v. Reid,* 114 Wash. 609, 196 Pac. 13, and quoted above:

"It is but the enforcement of the old and familiar rule that, of two innocent persons one of whom must suffer by the fraud of a third person, he who has put it in the power of such third person to commit the fraud must be the sufferer."

Our decision is in accord with the rule adopted in similar

cases in most jurisdictions, as is shown by the annotation found in 151 A.L.R. 690, 692.

The judgment of the trial court is affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.