## The People ex. rel. William Colby v. the Township Board of Woodhull in the County of Shiawassee.

*Mandamus. Petition to compel Town Board to allow claim—What must set forth.* The act to legalize the action of townships and cities in the counties of Shiawassee, Genesee and Tuscola (*Laws of* 1865, *p.* 271) only authorizes the refunding of money which may have been raised, advanced, contributed or loaned for the purpose of paying bounties to volunteers or procuring enlistments, and one who seeks by mandamus to compel the township board to audit and allow a claim for advances made in pursuance of said act must set forth a state of facts showing his claims to be within its terms, and imposing the duty of which he seeks to compel the performance. It will not be sufficient that the petition shows the advances may have been for some of the purposes authorized by this act.

A petition, in such case, which merely states that the advances were made for the purpose of filling the quota of the township, without showing that they were made for the purpose of procuring enlistments, or paying bounties to volunteers, does not bring the claim within said act.

*Ballot, what it should state in the absence of a prescribed form.* When a Legislative Act authorizes the question of raising a tax for a specific purpose, to be submitted to the electors, without prescribing the form of the ballot to be used, it is necessary in order to render the vote operative, that the ballot of the voter should show that the specific question contemplated by the act was passed upon.

*Heard October* 11*th. Decided November* 11*th.*

Motion for a mandamus. The following facts were set forth in the petition:

That the petitioner was a tax payer owning real and personal property in the township of Woodhull in the county of Shiawassee of the value of four thousand dollars; that in August, 1864, the quota of said township under a previous call of the President for volunteers was eleven men; that for the purpose of filling said quota the "petitioner advanced said township the sum of one hundred and thirty-seven dollars and sixty-seven cents on his own account," and that afterwards on the 3d day of February, 1865, "he further advanced to said township the sum of ten dollars for the purpose of filling the quota of said township under the call of December 4th, 1864."

That in pursuance of Act No. 163 (*Laws of* 1865, *p.* 271,) the qualified electors of said township, at a regular meeting,

THE PEOPLE v. TOWNSHIP BOARD OF WOODHULL.

determined by ballot to raise money by tax to refund advances made for bounty purposes; that the form of the ballots used at said meeting was as follows: "For refunding by tax money paid to procure credits to apply on previous quotas, not to exceed $300 per man;" and that the whole number of votes cast was one hundred and sixteen, of which sixty-seven were given in the affirmative, and forty-six in the negative; that the Board of Auditors of said township afterwards, pursuant to notice previously given, held a meeting for the purpose of auditing such claims, and upon the presentation of that of the petitioner refused to receive and allow it; and to compel the Board to do so, the petitioner prayed for a writ of *mandamus*.

*H. McCurdy* for relator.

*A. Gould* and *C. I. Walker* for respondent.

CHRISTIANCY J.

This is an application for a mandamus to compel the township board to meet and audit and allow a claim of the petitioner for the sum of one hundred and forty-seven dollars and sixty-seven cents for moneys which he alleges he advanced to the township, "for the purpose of filling the quota of said township," which quota is stated to have been, in August, 1863, eleven men, apportioned under a call or proclamation of the President. The advances are all stated to have been made prior to the fourth day of February, 1865. The application is based upon an act of the Legislature of this State, approved March 14th, 1865, entitled "An Act to legalize the action of townships and cities in the counties of Shiawassee, Genesee and Tuscola in raising bounties for volunteers;" and the petition alleges a vote of the inhabitants of the township "to raise money by tax to refund advances made for bounty purposes."

To entitle the petitioner to a mandamus in this case he must,

(as in other cases,) set forth a state of facts, which, under the law, imposes upon the township board the duty of which he seeks to compel the performance.

The act provides for raising by vote of the inhabitants of the township a tax for the purposes: 1st, of paying bounties to persons who have furnished substitutes or representative recruits; 2d, to drafted men serving in person in the military service of the United States; and 3d, for the purpose " of refunding any sum or sums of money which may have been raised, advanced, contributed or loaned by any individual or association of individuals for the purpose of paying bounties to volunteers, or procuring enlistments into the said military or naval service of the United States, to fill any quota assigned to such township or city, under any call for troops heretofore made." As the petitioner's claim is for advances made, it must come under the third head above mentioned, if it come within the act at all, as neither of the others makes any provision for refunding moneys advanced or contributions made by individuals. His petition does not show whether his advances were made for one or the other of these purposes, nor whether, in fact, for any of them. They are only alleged to have been made " for the purpose of filling the quota of the township." Now a drafted man counts towards the filling of the quota as well as a volunteer or enlisted man. And the act authorizes the inhabitants to vote a tax for paying bounties to drafted men; but it contains no provision for refunding or voting a tax to refund moneys advanced, loaned or contributed for that purpose, by any individual or association. This provision is restricted to the purpose of paying bounties to volunteers or procuring enlistments. If, therefore, the advances were made for bounties to drafted men, though such advances were made, in the language of the petition, for filling the quota, they are not advances for which the inhabitants could vote a tax. And until petitioner shows that he has made advances for which a tax is authorized to be made, he imposes no duty upon the township board to audit his claim. It is

not enough to say that the advances, as stated in the petition, *may have been* for some of the purposes authorized by the act; for they may with equal probability have been for purposes outside of the act. The petitioner makes no case till he affirmatively shows his claim to come within the act.

Again, his advances are all stated to have been made prior to the 4th day of February, 1865. Now if they were made to pay bounties for any substitute, representative recruit, or drafted man, who entered the service prior to that date, his claim is cut off by the proviso to the first section. The reason for this portion of the proviso, doubtless, was that all prior advances had been sufficiently provided for, by prior acts. See act of March 7th, 1863 (*Session Laws, p.* 92,) and act of February 4th, 1865, (*Session Laws, p.* 29, *&c.*) The last named act provides for raising bounties (of a less amount than the present act) for future and past enlistments, and the twelfth section prohibits any township or city thereafter to raise or pay or pledge their credit for the purpose of raising bounties, except as in that act provided. Hence the proviso in section one of the act under consideration against bounties to substitutes, representative recruits, and drafted men, entering the service prior to the 4th of February, 1865. And hence the provision against raising the bounties of three hundred dollars for enlistments after the 4th of February, unless such bounties had been " authorized" previous to that date; because, in the face of the prohibition of the act of February 4th, no pledges could properly have been made for any such bounty as provided for by this act of March 17th, though such pledges might have been made prior to the act of February 4th. By the previous authorization here referred to, we understand some kind of quasi corporate action by which the public faith of the township had been virtually pledged, such for example, as provided for in section six of the act of March 7, 1863. (*Session Laws p.* 94 *and* 95.)

Now it is quite evident that from the description of the advances stated in this petition, they may have been advances

which under the proviso to section one, were prohibited to be raised in the mode pointed out by the act.    Hence no neglect of duty is shown in the board by a refusal to audit the claim.

The petition should have stated the specific purpose for which the advances were made, to enable us to judge whether they come within the provisions of the act.    This might dispose of the case.    But if the petition had been sufficient as to the description of the advances, there is still a fatal objection upon the merits, to the relief asked.    The act makes no provision for the form of ballot by which the question of raising the tax is to be submitted to the electors.    All that was necessary, however, was that the vote should be upon the question or questions authorized to be decided by the vote.    The legislature may, and generally do, in such cases, provide the form of ballot, and when they do so the law in effect defines the meaning of the ballot, though that meaning is not fully expressed upon its face.    But when no form has been given, there is no such legislative definition given to its words, and it becomes necessary to express the meaning of the voter upon the ballots in some way.

In the present case the form of ballots seems to have been in the affirmative—"For refunding by tax moneys paid to procure credits on previous quotas, not to exceed $300 per man, yes;" and, in the negative the same form of words, striking out "yes," and inserting "no."    This is the question which was voted upon.    No other was decided by the vote.    It needs but a slight examination to discover that it is not the question authorized by the act to be submitted.    It is quite as objectionable for its generality as the statement of the advances in the petition.    It does not even refer to the act in question, and there is nothing to show that it was intended to have reference to it.    It might, doubtless, have been rendered definite by such reference.

The question voted upon goes back over the whole time from the beginning of the war, without any of the restrictions or limitations provided in the act, and would apply as. well

to moneys advanced for bounties to drafted men, and to the cases prohibited by the proviso, as to any others. It would cover any incidental expenses in going to the Provost Marshal's office and returning, and the time spent there in getting the rolls corrected, or any other incidental expenses as to bounties or advances for bounties. This vote affords, therefore, no evidence what the vote of the electors would have been upon the question really authorized to be submitted.

The application for a mandamus must be denied, with costs.

The other Justices concurred.